358

[No. 49351-5-I. Division One. November 12, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. M.L., *Appellant*.

*Stephen W. Kim* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Robin E. Sheridan, Deputy*, for respondent.

COLEMAN, J. — M.L. appeals her standard range disposition for second degree assault. She contends that the juvenile court erred when it failed to use her rehabilitation needs as the legal standard for determining whether to impose a manifest injustice disposition. We disagree. When the juvenile court denied M.L.'s request for a manifest injustice downward disposition, it correctly considered whether the standard range would clearly constitute excessive punishment. The time needed for rehabilitation is a factor the court may consider, but it is not an independent legal standard under the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW. We find no error and affirm.

## FACTS

On May 10, 2001, during a heated confrontation with a man who caught 13-year-old M.L. tinkering under the hood of his broken-down car, M.L. used a kitchen knife to make a swiping motion at the man on or near the front steps of her house. M.L. admitted she wielded and raised the knife,

but claimed she used it in self-defense to force the man away from the steps to her house after he followed her onto her porch.

The juvenile court heard testimony from numerous witnesses about the events surrounding the knife incident. There was conflicting evidence about exactly where M.L. and the man were standing when M.L. raised the knife and how far away they were from each other. It was undisputed, however, that M.L. had initially retreated to her house and then emerged with the knife, that she did not seek protection from neighbors or her friend's mother who was standing nearby, and that when taken into custody, she transferred her hostility from the man to the police who responded to the incident. At the end of the fact-finding hearing, the juvenile court rejected M.L.'s self-defense theory as not credible, finding that M.L.'s actions and statements were more consistent with uncontrolled anger and aggression toward the man than fear of him.

At the disposition hearing on September 11, 2001, several witnesses from M.L.'s former and current schools and the I-WA-SIL Youth Program, as well as M.L.'s mother, testified on her behalf. These witnesses commended M.L.'s academic achievements, her kindness and respect for authority, her work with tutoring and supervising younger children, and her commitment to getting anger management and drug and alcohol counseling. The prosecutor informed the court that M.L. had a propensity for violent outbursts, including a prior fourth degree assault. The court heard this evidence and then addressed the request for a manifest injustice disposition. In its oral ruling, the court stated that in order to impose a manifest injustice disposition, it must first find that the standard range is either clearly too lenient or clearly too excessive. After weighing the testimony from M.L.'s character witnesses against the facts of the assault incident, the court concluded that there was no legal basis for a downward disposition based upon manifest injustice and that the standard range was "appropriate."

## DISCUSSION

 The first issue that we address is whether M.L. may appeal her standard range sentence. Generally, a criminal defendant is permitted to appeal a standard range sentence only if the sentencing court failed to follow a required procedure. *State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993). In this case, M.L. challenges her disposition on the ground that the juvenile court failed to apply the correct legal standard when it rejected her request for a manifest injustice disposition. Because we are asked to decide the procedure the juvenile court must follow when it considers a manifest injustice disposition, we find that M.L.'s disposition is appealable.

We next address whether the juvenile court used the appropriate legal standard when it denied M.L.'s request for a manifest injustice disposition.

 The purposes of the JJA are to respond to the needs of juvenile offenders and to hold those offenders accountable for their offenses. RCW 13.40.010(2); *State v. Strong*, 23 Wn. App. 789, 792, 599 P.2d 20 (1979). The standard range disposition is presumed to accomplish these goals for most offenders. *State v. K.E.*, 97 Wn. App. 273, 282, 982 P.2d 1212 (1999). But if a juvenile court finds that imposing the standard range disposition would constitute a manifest injustice, it may depart from the standard range. RCW 13.40.0357. "Manifest injustice" is defined as "a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of [the] chapter." RCW 13.40.020(17). The reasons for a manifest injustice disposition must be supported by clear and convincing evidence. *State v. M.L.*, 134 Wn.2d 657, 660, 952 P.2d 187 (1998).

M.L. argues that, under this court's decision in *K.E.*, the juvenile court was required to use her rehabilitation needs as the legal standard for determining whether a manifest injustice disposition was appropriate. M.L. believes that had the court applied the rehabilitation needs standard,

her manifest injustice request would have been granted. Br. of Appellant at 11.

In *K.E.*, this court addressed whether an offender's rehabilitation needs may be used to justify an exceptional disposition downwards. *K.E.*, 97 Wn. App. at 282. In that case, the juvenile court imposed a downward disposition on the basis of several mitigating factors, including the offender's low risk to reoffend, lack of prior criminal history, and voluntary intoxication. On review, we determined that voluntary intoxication and lack of prior criminal history are not valid mitigating factors under the JJA, but an offender's low risk to reoffend is a factor that may be cited in support of a downward disposition.

> [A] juvenile court may impose a downward exceptional disposition where the court finds that a standard range disposition would constitute excessive punishment because the standard range is not needed to rehabilitate the juvenile offender or protect the public from criminal behavior.

*K.E.*, 97 Wn. App. at 286. Indeed, for some low risk offenders, the standard range disposition may be detrimental to the goal of rehabilitation. *K.E.*, 97 Wn. App. at 283.

■ By advocating use of a "rehabilitation needs" standard for imposing juvenile dispositions, M.L. in essence argues that this court should establish an alternative standard for making a manifest injustice determination. We decline to do so. *K.E.* does not establish a manifest injustice legal standard that requires the juvenile court to depart from the standard range when it finds that less time would adequately rehabilitate the offender. *K.E.* merely clarifies that the juvenile court may, in its discretion, impose a downward disposition if it finds that the standard range would constitute an excessive penalty because less time is needed for rehabilitation. In this case, the court's use of the "clearly excessive" standard comported with RCW 13.40.020(17) and *K.E.*

M.L. also argues that the juvenile court failed to consider mitigating circumstances when considering her manifest

injustice request. Br. of Appellant at 8. In response, the State argues that the juvenile court need not explain its reasons for imposing a standard range disposition.

■ Although a juvenile court is not required to give a reason for imposing a standard range disposition, there are certain procedures for accepting evidence and information at the disposition hearing that must be followed. RCW 13.40.150; *State v. Malychewski*, 41 Wn. App. 488, 489, 704 P.2d 678 (1985). The juvenile court is required to consider on the record any aggravating or mitigating factors presented, as well as a number of other factors set forth in RCW 13.40.150. *Malychewski*, 41 Wn. App. at 489. In *State v. N.E.*, 70 Wn. App. 602, 607, 854 P.2d 672 (1993), this requirement was met by the trial court's statement that it had reviewed the written reports submitted by defendant, even though those reports were not discussed at the hearing.

The record here shows that the juvenile court did consider the mitigating factors presented by M.L., but that in light of the seriousness of the crime and M.L.'s actions, the court found the standard range to be "appropriate." The court discussed on the record the mitigating factors related by M.L.'s character witnesses. Similar to *N.E.*, the court also referenced the evidence submitted by M.L. We are satisfied from the record that the juvenile court properly considered M.L.'s mitigating circumstances and decided in its discretion that the facts of this case did not warrant a departure from the standard range.

The juvenile court is affirmed.

AGID and SCHINDLER, JJ., concur.