# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 81421-4-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ASZAVION PHILLIP RAZAQ HAMIM, | |
| Appellant. | |

APPELWICK, J. — Hamim appeals from a judgment and sentence for first degree assault and attempted first degree robbery. First, he asserts the disposition order contained a scrivener's error that erroneously imposed an additional two months of confinement. Next, he argues the trial court erred in finding separate adjudications and dispositions for the assault and attempted robbery. He further argues the sentence violated the 150 percent rule under RCW 13.40.180(1). Finally, he contends the trial court abused its discretion in denying his request for a manifest injustice finding and a downward departure from the standard range sentence. We remand to the trial court to correct the scrivener's error and the conclusion of law consistent with this opinion, but otherwise affirm.

## FACTS

On September 18, 2018, Aszavion Hamim and an unknown associate attempted to steal marijuana from J.H. That evening, J.H. received a message that someone was outside of his building and was interested in purchasing

marijuana from him. He believed the message was from Hamim. J.H. went outside, where he encountered some of his friends.

Hamim and his associate approached J.H. and his friends and asked who had the marijuana. Hamim's associate told J.H., "We're either going to take it from you or we're going to buy it from you."

Hamim and his associate pointed pistols at J.H. Hamim's associate attempted to hit J.H. with his pistol and a struggle ensued. As the two struggled, Hamim approached J.H., held his gun to J.H.'s abdomen, and fired one shot into his stomach. Hamim's associate also shot J.H. Witnesses in the area began calling 911.

Hamim and his associate fled. J.H. limped to his apartment where his family called 911. He identified Hamim to law enforcement. The State charged Hamim with assault in the first degree and attempted robbery in the first degree with firearm enhancements.

At a bench trial, Hamim was found guilty of both counts. He was 15 years old at the time of the offense and 17 at the time of sentencing.

The trial court ruled the two offenses would not merge and that RCW 13.40.180 required similar analysis. It did not limit the term imposed pursuant to RCW 13.40.180. It declined his request for a finding of manifest injustice and downward departure from the sentencing guidelines. It imposed 103-129 weeks confinement for the assault, 15-36 weeks for the attempted robbery, and 10 months confinement for the firearm enhancements to be served consecutively. It did the same on a section of the disposition order entitled, "Commitment to the

Juvenile Rehabilitation Administration." On the next page of the order, it checked a box imposing an additional two months of firearm enhancements.

Hamim appeals.

## DISCUSSION

Hamim appeals on several grounds. First, he argues the disposition order contain a scrivener's error that erroneously imposed an additional two months of confinement. Second, he argues the trial court erred in finding the attempted first degree robbery had been completed by the time of the assault. Third, he argues the trial court misapplied the 150 percent rule under RCW 13.40.180(1). Finally, he argues the trial court erred in denying his request for a manifest injustice finding and a downward departure from the standard range sentence.

## I. Scrivener's Error

Hamim contends, and the State concedes, that a box appears to have been inadvertently and erroneously checked on the disposition order imposing an additional two months of firearm enhancements.

A scrivener's error is a clerical mistake that, when amended, would correctly convey the trial court's intention, as expressed in the record at trial. State v. Davis, 160 Wn. App. 471, 478, 248 P.3d 121 (2011). The amended judgment should either correct the language to reflect the court's intention or add the language that the court inadvertently omitted. State v. Snapp, 119 Wn. App. 614, 627, 82 P.3d 252 (2004). Clerical mistakes in judgments and orders may be corrected by the court at any time on the motion of any party. CrR 7.8(a). The remedy for a

scrivener's error in a judgment and sentence is to remand to the trial court for correction. State v. Makekau, 194 Wn. App. 407, 421, 378 P.3d 577 (2016).

We accept the State's concession that the box on the disposition order was checked in error and remand to the sentencing court to correct the error consistent with this opinion.

II. Separate Adjudications and Dispositions

A. Factual Findings and Conclusions of Law

Hamim next disputes one of the trial court's factual findings in relation to its conclusions of law.

Generally, a trial court's factual findings are considered verities on appeal, provided there is substantial evidence to support the findings. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. Id. Conclusions of law are reviewed de novo. State v. Ross, 106 Wn. App. 876, 880, 26 P.3d 298 (2001).

Hamim argues the attempted robbery was ongoing at the time of the assault. The trial court found Hamim attempted to rob J.H., stating, "When that was not successful, [Hamim] and an accomplice both intentionally shot [J.H.]." Hamim argues to the extent this finding suggests the assault occurred after the attempted robbery was completed, it should be rejected as erroneous. He contends this finding is at odds with a parenthetical in the trial court's conclusions of law that stated Hamim "took a substantial step with intent to commit robbery,

towards the commission of robbery (by shooting [J.H.] in the stomach while trying to take [his] marijuana)."[1]

But, while conclusions of law are reviewed de novo, great deference is afforded to the trial court's factual findings because trial judges "are closest to the trial scene and thus afforded the best opportunity to evaluate contradictory testimony." See Hill, 123 Wn.2d at 646.

While Hamim and his associate demanded marijuana at the outset of the interaction with J.H., the record contains no indication there were subsequent requests for marijuana during the shooting. And, the attackers did not take marijuana off of J.H.'s person at the conclusion of the shooting. The record provides substantial evidence to support the contested factual finding.

It is only the parenthetical phrase in the conclusion of law that is not supported by the facts and must be stricken. The facts in the record clearly support the conclusion that the elements of attempted robbery in the first degree were met.

B. Applicability of the 150 Percent Rule

Hamim argues the trial court abused its discretion by failing to apply the correct legal standard in deciding the 150 percent rule was inapplicable to his case. He asserts this court should remand for resentencing to apply the correct legal standard.

---

[1] Citing to a line of civil cases, Hamim contends this court should construe the contested factual finding to support the trial court's conclusions of law. He does not provide any authority addressing criminal procedure. Additionally, the cited cases concern factual findings that are subject to multiple interpretations. Here, the contested finding clearly states that the shooting occurred at the conclusion of the unsuccessful attempted robbery.

The trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

RCW 13.40.180(1) provides in relevant part,

(1) Where a disposition in a single disposition order is imposed on a youth for two or more offenses, the terms shall run consecutively, subject to the following limitations:
    (a) Where the offenses were committed through a single act or omission, omission, or through an act or omission which in itself constituted one of the offenses and also was an element of the other, the aggregate of all the terms shall not exceed one hundred fifty percent of the term imposed for the most serious offense.

Hamim was convicted of assault in the first degree and attempted robbery in the first degree. Because he argues this court should interpret the factual findings to support that the attempted robbery was still ongoing, he also argues the court should have found that the two offenses shared the same criminal intent. He further contends the trial court confused the analysis of whether the 150 percent rule applied with doctrines of double jeopardy and merger. We disagree. As discussed above, the record supports the finding of fact that the shooting occurred after the robbery was unsuccessful, not while it was ongoing.

But, even if the 150 percent rule were applicable, there would be no violation. Hamim's juvenile dispositions were provided in ranges: 103-129 weeks for the first degree assault and 15-36 weeks for the first degree attempted robbery. 150 percent of the term imposed for the most serious offense, the 103-129 weeks,

would be 154.5-193.5 weeks. So, the aggregate of the consecutive terms that was imposed for Hamim's offenses, 118-165 weeks, complies with the rule.[2]

Hamim has not demonstrated any error.

III. Request for Manifest Injustice Finding

Finally, Hamim argues the trial court erred in denying his request for a manifest injustice finding and a downward departure from the standard range sentence under the Juvenile Justice Act of 1977, chapter 13.40 RCW.

The purposes of the Juvenile Justice Act are to respond to the needs of juvenile offenders and to hold those offenders accountable for their offenses. RCW 13.40.010(2); State v. M.L., 114 Wn. App. 358, 361, 57 P.3d 644 (2002). The standard range disposition is presumed to accomplish these goals for most offenders. Id.

If a juvenile court finds that imposing the standard range disposition would constitute a manifest injustice, it has discretion to depart from the standard range and impose a downward disposition. RCW 13.40.0357; M.L., 114 Wn. App. at 361. "Manifest injustice" is defined as "a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of this chapter." RCW 13.40.020(19). A juvenile

---

[2] Hamim includes the weapon enhancements in his calculation of the total sentence when evaluating whether the sentence violates the 150 percent rule. He does not provide authority to support his inclusion of the enhancements in the total sentence. We note that with the inclusion of the 6 month weapon enhancement, the term imposed on the assault offense would be 129-155 weeks, 150 percent of that would be 193.5-232.5 weeks. The aggregate of the terms imposed with both weapons enhancements was be 157-204 weeks. Under this method, the sentence still would not violate the rule.

court is not required to give a reason for imposing a standard range disposition. State v. Malychewski, 41 Wn. App. 488, 489, 704 P.2d 678 (1985).

Hamim states he presented evidence to the trial court of relevant factors highlighted in his presentence report, such as his lack of prior criminal history, strong family support, and youthfulness. Hamim acknowledges that the trial court would have been within its discretion to decide these factors were insufficient to warrant a downward departure from the standard range sentence. But, he argues the trial court misapplied the law by failing to consider the factors.

At sentencing, the court stated that to find the standard range sentence would be a manifest injustice, it needed "substantial evidence to support the departure and substantial evidence to show one of two things: either Mr. Hamim is not in need of further rehabilitation or there's no need to protect the public from future criminal behavior." Hamim argues the court misinterpreted State v. K.E. to limit the manifest injustice analysis to these two factors alone. 97 Wn. App. 273, 282-83, 982 P.2d 1212 (1999) (holding a juvenile court may impose a downward exceptional sentence based on clear and convincing evidence that the standard range disposition would be detrimental to the goal of rehabilitation and would not endanger to the public). Hamim contends this misapplication of the law resulted in an abuse of the court's discretion requiring reversal for resentencing.

Hamim provided evidence in support of a downward exceptional sentence. The record indicates that the trial court explicitly considered that evidence. The trial court noted his lack of criminal history was already a consideration under the standard range sentences. It also made note that Hamim had received at least 17

infractions during his year-and-a-half of incarceration. It addressed Hamim's youthfulness, telling Hamim, "You don't have to let this be the defining event in your very young life." It commented on a report Hamim had provided, calling the organizational author "exceptionally thoughtful on looking at issues like recidivism which you have clearly pointed out is something I should consider, and I have." It expressly considered Hamim's "strong family support structure." This evidence went to the issue of lessened need for rehabilitation and low degree of danger to the public. Hamim points to no other factor he sought to address.

Ultimately, the trial court concluded,

> I've taken all of this into consideration. I've taken into account the facts of the case. And I don't find that a departure below the standard range or that a manifest injustice would occur with a standard-range sentence. And that's what I would have to find. The evidence presented today does not support a departure from the standard range.

This is an appropriate exercise of discretion, not a misapplication of K.E.

We remand to the trial court to correct the scrivener's error and the conclusion of law consistent with this opinion, but otherwise affirm.

_Appelwick, J._

WE CONCUR:

_Brennan, J._   _Mann, C.J._

9